Filed 11/30/15  Dykier v. Cox CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| DARLA JEAN DYKIER, | C077006 |
| Plaintiff and Respondent, | (Super. Ct. No. PR14010) |
| v. | |
| RICHARD A. COX, | |
| Defendant and Respondent; | |
| PLATTE RIVER INSURANCE CO. | |
| Objector and Appellant. | |

This case is about notice.  Plaintiff Darla Jean Dykier (the successor trustee of her family's trust) concedes she did not mail notice of her petition to remove and surcharge defendant Richard Cox (the professional trustee hired to manage the family trust, who stole trust funds to finance his Ponzi scheme) to the surety for Cox's bond, objector Platte

1

River Insurance Company, as required by the Probate Code. The trial court, however, made a factual finding that the surety got constructive notice through its agent and then later actual notice, but the surety chose not to participate.

Now, faced with a $280,209.31 judgment it has to pay, Platte River Insurance Company comes up with a "gotcha": no statutory notice means no due process for the surety and no jurisdiction for the trial court to allow Dykier to enforce the surcharge judgment against the bond.

Platte River Insurance Company is wrong. The surety received due process of law through constructive and actual notice. And the trial court was not deprived of jurisdiction because the notices given to Platte River Insurance Company informed it exactly of what issues the court adjudicated, and the most interested parties (Cox and Dykier) actively participated in the litigation, while the surety chose to stay on the sidelines. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Norman "Gene" Russell and wife Bonnie Russell built a successful cement contracting business in Southern California. In 1992, they put their assets in the Russell Family Trust for their three children, Darla Dykier, Denise Knight, and Dennis Russell. Gene Russell died in 2005.

In November 2008, the court appointed Cox trustee of the family trust. The same month, Cox got a trustee's surety bond from Platte River Insurance Company for $1.5 million. Within months, Cox began secretly removing trust assets to further what would later be described by the California Department of Corporations as a Ponzi scheme. Cox's Ponzi scheme involved siphoning off nearly half a million dollars from over 20 trusts he managed and stashing those assets in a real estate investment company he and his wife secretly owned called Fiduciary Investments.

On November 29, 2011, after learning about the Ponzi scheme and the money her family lost, Dykier filed an ex parte petition to remove Cox as trustee and to surcharge

him.  When she filed her petition, she did not mail a notice of the petition to Platte River Insurance Company.

Nine days before the filing, on November 20, 2011, Dykier's attorney, Michael Freedman, e-mailed the agent for Platte River Insurance Company, Todd Christensen of Phillips Bonding & Insurance Agency.  In the e-mail, Freedman told Christensen the following:  Dykier was Freedman's client and a beneficiary of the Russell Family Trust; Cox was "the subject of a Dep[ar]t[ment] of Corporations cease and desist order for conducting a Ponzi Scheme with Trust assets";  Freedman "believe[d] Phillips Bonding has the bond for Richard A. Cox"; Freedman was "notifying [Christensen] of the claim for surcharge damages against Mr. Cox"; and Freedman calculated total losses at about $180,757, comprised of "losses of $100,757 and $40,000 in principal, and 10% interest damages of about $40,000."  Freedman then asked, "What is the total amount of the bond?  Can you notify the carrier to set the reserve?"

Christensen replied to this e-mail by telephone, "acknowledged receipt of the email notification of the surcharge action against Mr. Cox," and told Freedman "reserves are not set."

"Thereafter, Mr. Christensen and [Freedman] discussed the progress of the surcharge action against Mr. Cox on numerous occasions in person . . . in San Francisco County Superior Court, where Mr. Christensen often attends probate hearings."  In these meetings, Freedman "explained to Mr. Christensen the reason for the surcharge case against Mr. Cox, the nature of the liability against Mr. Cox, the fact that the Department of Corporations had uncovered the Ponzi Scheme-like nature of Mr. Cox's activities with various trust assets, and the calculation of the estimated damages suffered by the Russell Trust.  As the case progressed, [Freedman] discussed the outcome of the trial with Mr. Christensen.  Finally, [Freedman] . . . informed Mr. Christensen of the final Statement of Decision, the motion for attorney fees and the memorandum of costs and the final Judgment against Mr. Cox."

After a hearing on November 29, 2011, at which attorneys for Cox and Dykier appeared, the court temporarily suspended Cox's trustee powers and appointed Dykier as the successor trustee and set a trial date for 2012.

Cox sent a letter to Phillips Bonding & Insurance Agency stating, "I have had my powers tempora[ril]y suspended as Trustee of the Russell Trusts by the probate judge per the enclosed a copy of a court order in Tehama Co[unty]. I am enclosing a copy of my attorney's objections to this action. [¶] We have a hearing to decide if the order should be vacated and I be reinstated as trustee, or the order made permanent on Feb.29, 2012." [1]

A two-day bench trial was held on February 29, 2012, and March 1, 2012.

On June 12, 2012, the trial court filed a 10-page statement of decision. The court found that Cox had improperly shifted more than $100,000 from the Russell Family Trust to Fiduciary Investments. Cox used that money to pay back other trusts he had raided to fund a real estate speculation scheme and used the rest of the money to run his company and pay himself and his wife income. Cox paid back the Russell Family Trust approximately $7,000 and granted the trust 50 percent ownership in the only property Fiduciary Investments owned, valued at $55,000. Cox "used the assets of the Russell Family Trust in order to benefit other trusts to the detriment of the Russell Trust. He then failed to adequately disclose those transactions." Cox had done the same things in 2003 with another family trust, and in that case the trial court in San Francisco ordered that Cox divest that family trust of all holdings in fiduciary investments.

The trial court concluded the following: Cox "committed a patent breach of trust." Cox's "opposition to his removal and surcharge was in bad faith justifying the award of attorney fees." It ordered Cox permanently removed as trustee and Dykier appointed successor trustee and ordered Cox to pay the trust $122,014 in damages, forfeit

---

[1] It is unclear when this letter was mailed. There is a notation on one the pages of the letter stating "MAILED 2/28/12." The letter was dated March 15, 2012.

$116,915.28 that had been paid him in trustee fees, and pay Dykier's costs and attorney fees.

On July 3, 2012, the trial court issued a judgment against Cox for $280,209.31.

A month later, on August 6, 2012, Christensen of Phillips Boding & Insurance Agency e-mailed the judgment to Platte River Insurance Company.

On August 31, 2012, Cox filed a notice of appeal from the judgment against him for $280,209.31. On October 29, 2012, this court's mediation program e-mailed the lawyer for Platte River's Insurance Company (Kevin Solan) regarding the possibility of mediation. On October 31, 2012, Platte River's lawyer responded that neither he nor Platte River would be participating in the mediation because Platte River's "obligations with respect to its bond are those of a surety only, and not those of an insurer. As such, Platte River has no obligation to provide or contribute to the defense of this matter of the prosecution of this appeal."

On August 28, 2012, Platte River Insurance Company contacted Dykier's lawyer and requested to see the proof of service from the surcharge petition, claiming the surety did not receive notice of the hearing on the surcharge petition.

On October 5, 2012, Dykier filed a petition for an order retroactively dispensing with notice to Platte River Insurance Company regarding the petition to remove Cox as trustee and surcharge him. The petition claimed Platte River Insurance Company had actual notice of the removal and surcharge claims and despite such knowledge, the surety never filed a request for special notice, never contacted Dykier's attorney, and never mailed any of its contact information to Dykier or her attorney. "Dykier had no information pertaining to the identity of the surety, other than knowledge that Mr. Cox had paid premiums to Phillips Bonding Insurance Company, which was disclosed in the accounting." Cox was under court order to turn over the trust documents to Dykier, and when he did, there was no information pertaining to the current bond. "At no time in this proceeding, did Ms. Dykier know the identity of the surety or the surety address."

5

On October 2, 2013, Cox died. On December 17, 2013, this court granted the request of Cox's attorney to dismiss the appeal filed on April 31, 2012, and a remittitur issued forthwith.

Also on December 17, 2013, Freedman wrote a demand letter to the attorney for Platte River Insurance Company for payment of the $280,209.31 judgment to Dykier. The attorney for Platte River Insurance Company responded the next month that it was not liable for the judgment against Cox because the surety was not mailed notice of the claim against Cox at the mailing address listed on the bond when Dykier filed her petition in November 2011.

On February 26, 2014, Dykier filed a motion to enforce the bond against Platte River Insurance Company. The surety opposed the motion.

On May 28, 2014, the court granted Dykier's motion to enforce the bond. The trial court made the following factual findings: Christensen was the agent for Platte River Insurance Company; on November 20, 2011, Dykier's attorney e-mailed Christensen notice of the claim for surcharge damages against Cox, asked about the amount of the bond, and asked to notify the carrier to set the reserve; Christensen responded by telephone that reserves are not set; Dykier's attorney and Christensen discussed the details of the underlying case on numerous occasions when they would see each other in the San Francisco Probate Court from December 2011 to September 2012 and Dykier's attorney informed him of the progress of the case, the date of Cox's deposition, and the date for the trial against Mr. Cox; and Christensen contacted Cox and his attorney after receiving the November 20, 2011 e-mail from Dykier's attorney to ask about the case. The trial court held that "[a]lthough Platte River did not receive statutory notice of the initial proceeding, [Dykier] gave informal notice of the proceeding to Platte River's agent and there did not appear to be any fraud or attempt to hide or mislead." Platte River Insurance Company also got actual notice of the trial and also had an opportunity to participate in the appeal but chose not to.

6

Platte River Insurance Company filed a notice of appeal from the May 28, 2014, order granting the motion. The court rendered judgment for Dykier on August 6, 2014, and entered judgment on August 8, 2014. We will deem the notice of appeal to be filed immediately after the subsequently entered judgment. (Cal. Rules of Court, rule 8.308(c); *Fuller v. First Franklin Financial Corp.* (2013) 216 Cal.App.4th 955, 959.)

DISCUSSION

Platte River Insurance Company contends Dykier deprived it of due process of law under the federal and state Constitutions because Dykier did not mail to Platte River Insurance Company notice of the petition to remove Cox as trustee and surcharge him. The surety uses this same fact to then argue that the trial court lacked jurisdiction to allow Dykier to enforce the surcharge judgment against the bond. Platte River Insurance Company is wrong.

I

*Platte River Insurance Company Received Constructive*

*And Actual Notice, Satisfying Due Process*

The statutory provision requiring mailed notice is Probate Code section 1213, which reads in pertinent part as follows: "(a) The following persons shall mail a notice, as described in Section 1211, to a surety who has filed a court bond in a proceeding: [¶] (1) A person who files a petition to surcharge. [¶] . . . [¶] (c) The notice required by this section shall be mailed to the address listed on the surety bond."[2]

---

[2] The form of notice required by Probate Code section 1211 is as follows:

"SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE (CITY AND) COUNTY OF _____
Estate of _____                                    No. _____
NOTICE OF HEARING

(If to be published, describe purport or character of the notice to be given.)

7

To satisfy federal constitutional due process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (*Mullane v. Central Hanover B. & T. Co.* (1950) 339 U.S. 306, 314 [94 L.Ed. 865, 873].)

California courts apply the same principle. For example, in *In re Albert B.* (1989) 215 Cal.App.3d 361, the appellate court analyzed a mother's claim that the trial court's failure to give her statutorily required notice that at a certain hearing the court could terminate her parental rights invalidated the order terminating those rights. (*Id*. at pp. 379-381.) The court explained that the mother's "concern with notice is more appropriately suited for protection by the constitutional right to due process of law," and proceeded to explain why "any error by the trial court [was] harmless." (*Id*. at pp. 380, 381.) The trial court "substantially complied with the statute and fulfilled any due process requirements through the prior notice to the parents" because the court gave the parents actual notice at an earlier hearing, the social worker's report gave them constructive notice of the dates of the hearing at which their parental rights might be terminated, and parents had not alleged that the court's error in giving them statutorily required notice prejudiced them in any way. (*Ibid*.) This opinion makes clear that the due process inquiry is independent from a party's compliance with statutory notice.

---

Notice is hereby given that (name of petitioner and representative capacity, if any) has filed herein a (nature of petition, application, report, or account), reference to which is made for further particulars, and that the time and place of hearing the same has been set for _____ (date) _____, at _.m., in the courtroom (of Department No. ____, if any) of said court, at (the courthouse, or state other location of the court), in the City of _____, California.
Dated _____

_____,
Clerk
By _____, Deputy Clerk"

8

Here, too, there was no violation of constitutional due process. Platte River Insurance Company was given notice at least three times.

The first time, Platte River Insurance Company was given constructive notice through its agent, Christensen of Phillips Bonding & Insurance Agency, of Dykier's petition to remove Cox as trustee and to surcharge him nine days before Dykier filed the petition. Notice to an agent is constructive notice to the principal. (*Bierce v. Red Bluff Hotel Co.* (1866) 31 Cal. 161, 165.) That notice contained the pertinent details about the case, such as the reason Dykier was petitioning the court to remove Cox as trustee and surcharge him and that the amount of loss was about $180,757. Thereafter, Dykier's attorney and agent Christensen "discussed the progress of the surcharge action against Mr. Cox on numerous occasions in person . . . in San Francisco County Superior Court, where Mr. Christensen often attends probate hearings."

The second time, Cox himself gave constructive notice of the order temporarily suspending him as trustee to Phillips Bonding & Insurance Agency via letter. The letter enclosed a copy of the trial court's order and stated that the hearing for the court to determine whether to vacate the order or make it permanent was on February 29, 2012. Although the letter was dated five weeks after the temporary order was issued and two weeks after the hearing on whether to vacate the order or make it permanent, it was still almost a month before Cox filed his notice of appeal, thus giving Platte River Insurance Company time to file its own notice of appeal, if it so chose.

And the third time was when this court's mediation program e-mailed Platte River Insurance Company's attorney nearly two months before the appeal was dismissed, notifying the attorney of the possibility of mediation because Platte River was the underwriter of Cox's bond. The attorney responded that neither he nor Platte River would be participating in the mediation and "Platte River has no obligation to provide or contribute to the defense of this matter of the prosecution of this appeal."

9

Each of these notices was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (*Mullane v. Central Hanover B. & T. Co.*, *supra*, 339 U.S. at p. 314 [94 L.Ed. at p. 873].) At each juncture, Platte River Insurance Company chose not to get involved, despite having sufficient notice of the claims against Cox to satisfy due process of law.

II

*The Trial Court Had Jurisdiction To Let Dykier*

*Enforce The Surcharge Judgment Against The Bond*

Repackaging its due process contention using the same facts and different law, Platte River Insurance Company argues that the trial court "lacked jurisdiction to let Dykier enforce the surcharge judgment against the bond." The authority Platte River Insurance Company uses for its argument is *Estate of Jenanyan* (1982) 31 Cal.3d 703. *Jenanyan* involved a petition by an administrator of an estate asking the court to determine the proper application of the abatement provisions of the Probate Code. (*Jenanyan*, at p. 706.) The petitioner sought permission to make a preliminary distribution to appellant of an interest in real property, and the objecting party agreed on that point. (*Id*. at pp. 706-707.) Consequently neither appellant nor her lawyer attended the hearing. Yet, after hearing the petition, the trial court ruled the real property interest would abate ratably with general bequests. (*Id*. at p. 707.) On appeal, appellant challenged the court's order as void for lack of notice because it went beyond the issues raised by the petition; she also contended the notice was not sufficient to alert her to the possibility that the court would consider abatement of her interest. (*Id*. at pp. 708-711.) The Supreme Court found merit to both claims. (*Id*. at pp. 709, 710.) In part, it explained: "The facts of this case demonstrate the importance of adequate notice. The issue of abatement of the real property devise apparently was not discussed at the hearing on the administrator's petition. It was raised only later, in a letter to the court. The most

10

interested party was not present at the hearing where the issue apparently was decided. Since the trial court's order exceeded the bounds of the notice that the interested parties had received, the court decided the issue without the benefit of briefing or argument. In so acting, the court abused its discretion and exceeded its jurisdiction, ruling on an issue without giving the interested parties due notice." (*Id*. at p. 711.)

This case is distinguishable from *Jenanyan* in the two material aspects on which that opinion was based. First, here unlike in *Jenanyan*, the notices given to Platte River Insurance Company informed it exactly of what issues the court adjudicated, namely, whether Cox was to be removed as trustee and whether Cox was to be surcharged. Second, here unlike in *Jenanyan*, the most interested parties -- Cox (the trustee whose actions were being questioned) represented by counsel and Dykier (whose family trust was allegedly raided by Cox) also represented by counsel -- were present when the issues were decided. In fact, Cox had two attorneys litigating on his behalf at the two-day bench trial over whether to permanently remove him as trustee and whether to surcharge him. They presented testimony, exhibits, and documents at trial, objected to opposing counsel's evidence, and presented closing argument. On the other hand, Platte River Insurance Company could play only a very limited role in the litigation, even if it had chosen to participate. A surety's right to participate in the litigation is limited to asserting only that the surety bond does not exist, that the judgment does not exist, that the judgment was paid off, or that the judgment was obtained by fraud or collusion. (*Crumrine v. Dizdar* (1943) 59 Cal.App.2d 783, 788.) It " 'may not show that the court erred in making the decree. . . .' " (*Id*. at p. 789.) Here, Platte River Insurance Company has never claimed that any of the former scenarios existed. Rather, it seems that Platte River chose not to involve itself in the litigation with the strategy of waiting until the end to claim lack of statutory notice. Its attempts to do so failed in the trial court and fail here, too.

11

## DISPOSITION

The judgment is affirmed.  Dykier is entitled to her costs on appeal.  (Cal. Rules of Court, rule 8.493(a)(1)(A).)

/s/
Robie, J.

We concur:

/s/
Raye, P. J.

/s/
Hull, J.

12